### NORTH RIVER INS. CO. v. ADAMS.
(No. 10026.)

Court of Civil Appeals of Texas.    Dallas.
Nov. 5, 1927.

Rehearing Denied Dec. 10, 1927.

1. Insurance ⟨key⟩574(1) — Appraisers' acts, in fire loss appraisement, in excess of authority conferred by appraisal agreement, are not binding on parties without ratification.

Where the appraisers of a fire loss act on matters not authorized by the agreement of appraisal entered into between the insurer and the insured, such acts in excess of authority are not binding on the parties, in the absence of ratification.

2. Pleading ⟨key⟩193(1)—Overruling demurrer to part of petition held not error, where such part was matter of inducement, not forming recovery basis.

Where, in an action against an insurance company on a fire insurance policy, defendant demurred to a part of plaintiff's pleading, overruling such demurrer was not error, where the part of the pleading demurred to was a matter

of inducement, not forming the basis of prayer and recovery.

**3. Insurance ⊙⇒665 (4)—In action on fire policy for automobile loss, evidence held to show automobile was valueless after fire.**

Where insured sued insurance company on fire policy because of destruction of his automobile and failure of appraisal agreement, evidence *held* to show that the automobile was valueless after the fire.

Appeal from District Court, Rockwall County; Joel R. Bond, Judge.

Suit by W. H. Adams against the North River Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

E. G. Senter, of Dallas, for appellant.

Renfro, Ledbetter & McCombs, of Dallas, for appellee.

VAUGHAN, J. Appellee, W. H. Adams, filed his suit in the court below against appellant, North River Insurance Company, on a fire insurance policy issued on the 24th day of September, 1924, by appellant, covering a 1923 model Hudson sedan, insuring appellee against loss by fire in the amount of $1,500. Appellee alleged the terms of the policy, the total loss by fire of the automobile, the provisions of the policy providing for appraisal, the attempt to appraise the loss by appraisers appointed by the parties, that the appraiser appointed by appellant was interested, and had before represented it in that capacity, and that the umpire was not disinterested. In paragraph 5 it was alleged:

"That said appraisers and umpire could not agree as to the amount of loss or damage; that said Lacey was about to depart for Dallas when he and Paulk, the local agent for the defendant, secured the consent of plaintiff, W. H. Adams, to take $1,175 as a compromise, if paid immediately in cash. That said appraiser, H. H. Lacey, and Umpire, S. F. Miller, sought to enter into said agreement and' compromise, and conducted themselves as interested parties for said insurance company, but have fraudulently and *in bad faith* contended that no amount was agreed upon as a compromise."

It was further alleged that the appraisal sheet was fraudulently changed and altered after its execution; that in the column of the award for the insertion of the sound value as found, the numerals "15" or "1500" were written so as to leave a blank space in front of the numerals 15 in the original and copy of the award as made by the appraisers; that same could be read as a finding of $15 or $1,500; that the appraiser, A. Hurst, selected by appellee, believed that the numerals inserted in said column found the sound value to be $1,500; that, after the original sheet was delivered to appellant, or before delivery of same, the finding of sound value was so changed by the insertion of the numerals 12

before the numerals 15 so as to make same read $1,215 as the sound value found of appellee's automobile alleged to have been destroyed by fire. Appellee prayed for judgment setting aside the purported appraisal made by the appraisers selected by appellant and appellee for the recovery for damages in the sum of $1,500, with interest at the rate of 6 per cent. from November 22, 1925, and, in the alternative, for judgment for the amount of award alleged to have been made by the appraisers, to wit, $1,175, with interest from November 22, 1925, at the rate of 6 per cent. per annum, and, further, in the alternative, that, if said appraisal should be upheld, it be construed to find $1,500 as the amount of damages under said policy and under said appraisal, together with interest from November 22, 1925. Appellant filed demurrers to appellee's petition, all of which but one were overruled. It also pleaded a general denial, and for special pleas set up the provision of the policy providing for an appraisal of the loss alleged; that an appraisal was had in accordance with the terms of the policy; that there was no fraud or mistake in the report of the appraisers, and alleged that appellee was estopped from seeking to avoid the appraisal by reason of his conduct in relation thereto. The cause was submitted to a jury on special issues, which, with the answers made thereto, are as follows:

"Question No. 1. Was the appraisal sheet executed by the appraisers a mutual agreement or understanding among themselves that it should be made to show that the insured, W. H. Adams, would be paid $1,175 in cash? Answer: Yes.

"Question No. 2. Was the appraisal sheet executed by the appraisers under a mutual understanding among themselves that the sound value of the automobile in question prior to the fire was $1,500? Answer: Yes.

"Question No. 3. Was the appraisal sheet executed by A. Hurst under the belief that the 1500 in the sound value column was meant and so informed to be $1,500? Answer: $1,500.

"Question No. 4. Was the appraisal sheet which was delivered to defendant in this case changed after its execution to show under the column "Sound value" $1,215? Answer: Yes.

"Question No. 5. Did the appraisers, A. Hurst and H. H. Lacey, Jr., mutually agree on S. F. Miller to be umpire in the appraisement? Answer: No.

"Question No. 6. Was the appraisement award made to fix the amount of the sound value of the automobile in question, or to fix the amount to be paid the insured, W. H. Adams, on account of the fire and loss in question? Answer: W. H. Adams.

"Question No. 7. Was there a mutual agreement or understanding among the appraisers at the time of the execution of the appraisement sheet as to sound value of the automobile in question prior to the fire? If so, what value? Answer: $1,500.

"Question No. 8. What was the sound value

of the automobile in question at the time of the fire? Answer: $1,500."

Judgment was rendered by the court upon the answers to said special issues setting aside the appraisal and awarding appellee the sum of $1,125, together with $63 interest thereon at the rate of 6 per cent. per annum from November 22, 1925, to date of said judgment, October 25, 1926.

[1, 2] By what we will concede to be, for the purpose of determining this appeal, appropriate assignments, appellant questions the proceedings leading up to and including the rendition of said judgment. Appellant's first assignment challenges the action of the court in overruling its demurrer. While only a particular paragraph of appellee's petition was questioned by appellant's demurrer, same was in effect a general demurrer to section No. 5, supra. In passing on the demurrer, the court evidently treated the pleading to which it was addressed as being matter of inducement—in other words, that appellee did not seek to recover perforce of the matters therein alleged, but to account for the fact that the appraiser selected by him signed the award sought to be upheld by appellant in its answer, and in support of his charge of fraud on which it was sought to set aside said award. The agreement to arbitrate limited the power of the appraisers selected by the parties thereto to "appraise and ascertain the sound value of and the loss upon the" automobile that was covered by appellant's policy of insurance on which appellee's suit was predicated. No power was conferred by said agreement upon the appraisers selected by the parties for any other purpose, and any act of said appraisers extending beyond the purpose for which they were selected and authorized to act would not be binding upon the parties, unless same had thereafter, with the full knowledge of all of the surrounding circumstances, been ratified or adopted by them. Therefore, if the plea excepted to had been relied upon by appellee as a basis for recovery, on the ground that an agreement to compromise the matters in dispute between the parties had been reached, and that had been the effect of the pleading, then the exception should have been sustained, as said allegation could not furnish a basis for recovery on the policy involved. The petition as a whole cannot be so construed as to comprehend a recovery sought by virtue of said paragraph 5. This is apparent from appellee's prayer for relief, in that in neither form in which relief was prayed for did he base his right thereto upon this allegation of his petition. The only office this allegation performed was to present the attitude assumed by H. H. Lacey, the appraiser selected by appellant, and that of S. F. Miller, who acted as umpire in the attempted arbitration of the matter in dispute between appellant and appellee; namely, the loss sustained by appellee in the destruction of his automobile, and as an explanation why the sum of $1,175 was incorporated in the loss column in said award.

[3] Of the eleven propositions urged by appellant, excepting the one proposition which urges error in the ruling of the court on appellant's exception to paragraph 5 of appellee's petition, the remaining ten propositions are each directed to the insufficiency of the evidence to support the submission to the jury of the eight special issues and the answers as respectively made thereto. By reason of the fact that said remaining propositions are so interrelated as to present in fact but one proposition, namely, the insufficiency of the evidence to sustain the findings of the jury on the special issues submitted, we have only deemed it necessary, in reviewing the assignments, to determine whether or not as a whole the evidence before the jury was sufficient to support the findings on the issues submitted. We have carefully reviewed the testimony in connection with each issue as submitted, with the result that we have reached the conclusion that there was ample evidence before the jury of material import to support their verdict, and of sufficient probative force to prevent this court from disturbing any one of said findings. Therefore we find as material facts established by the evidence the facts as determined by the answers of the jury to the special issues submitted. The court did not submit, and neither was a request made to submit, an issue requiring the jury to find the value of the automobile immediately after the fire, and, notwithstanding review of the judgment rendered is not sought on the ground that such value was not ascertained, we feel called upon to make the following observations, namely: Appellee alleged that said Hudson sedan and equipments covered by the insurance policy declared on were totally destroyed by fire. The only evidence, as to the value of the automobile after the fire, offered was the testimony of A. Hurst, a witness for appellee, who testified as follows:

"I had seen that car often before it was burned—every few days. I do not remember the date, but I remember going down to the fire. The car, barn, and garage by the side of the barn burned. After the car was burned, you would call it a total wreck."

We therefore find from the evidence, in which there is no conflict, that appellee's automobile had no value after its destruction by fire, and that the trial court found that fact as a fact necessary to support the judgment rendered in behalf of appellee for the sum of $1,125 as being three-fourths of the value of appellee's automobile so destroyed.

Not finding any reversible error in the record, we are of the opinion that the judgment of the trial court should be affirmed, and it is so ordered.

Affirmed